FILED
APR 1 2 2010
DAVID CREWS, CLERK
BY _____ Deputy

IN THE CIRCUIT COURT OF CLAY COUNTY, MISSISSIPPI

L & M CONSTRUCTION, INC.; WAVERLY PLACE
CONDOMINIUM OWNERS' ASSOCIATION, INC.

Plaintiffs

1:10CV79-M-D

V.  CIVIL ACTION NO. 2010-6074

SHELTER MUTUAL INSURANCE COMPANY  Defendant

## COMPLAINT

L & M Construction, Inc. ("L & M") and the Waverly Place Condominium Owners' Association, Inc. ("Waverly Owners") file the following Complaint against Shelter Mutual Insurance Company ("Shelter Insurance"):

### I. Parties.

1. Plaintiff L & M (formerly Tabor Construction & Development, Inc.) is a corporation organized and existing under the laws of the State of Mississippi with its principal office located in Starkville, Mississippi.

2. Plaintiff Waverly Owners is a not for profit corporation organized and existing under the laws of the State of Mississippi with its principal office located in West Point, Mississippi. The Association consists of individual purchasers of condominium units at the Waverly Place Condominiums located in West Point, Mississippi.

3. Defendant Shelter Insurance is an insurance company organized and existing and with its principal office in a state other than Mississippi. Shelter Insurance may be served with process by serving the summons and complaint on C T Corporation

FILED CLAY COUNTY
APR 01 2010
Robert D. Harwell Jr.

System of Mississippi, 645 Lakeland East Drive, Suite 101, Jackson, MS 39232, its registered agent. Shelter Insurance is licensed to conduct an insurance business in Mississippi. Process has been lawfully issued and served upon Shelter Insurance. The Court has personal jurisdiction over Shelter Insurance.

## II. The Shelter Insurance Policies

4. L & M is a residential and commercial contractor and developer. At all times relevant to this Complaint, L & M was insured by Shelter Insurance under commercial general liability policies bearing Policy number 23-0A988-04 (and being a reissue of Policy Number 23-31-003051973-0002) and having effective dates of December 19, 1996 to December 19, 1997, and January 16, 1998 to January 16, 1999. L & M paid to Shelter Insurance several thousand dollars in premiums for this insurance protection. Complete copies of the L & M Insurance Policies are attached as Exhibit "1" and "2."

5. The terms of the L & M Insurance Policies mirror in all material respects policy forms drafted for Shelter Insurance by the Insurance Services Office ("ISO"). Most commercial liability insurance policy forms used in the United States are drafted by the ISO.

6. On information and belief, Shelter Insurance or the ISO on Shelter Insurance's behalf filed the policy forms contained in the L & M Insurance Policies with the Mississippi Department of Insurance.

7. In the L & M Insurance Policies, Shelter Insurance promised to defend and indemnify L & M from claims for property damages, including loss of use, caused by an

{00008439.DOC;} Page 2 of 11

occurrence, defined as an "accident." The ISO drafted policy forms were intended to provide and do obligate Shelter Insurance to defend and indemnify L & M from claims for property damages caused by any negligent construction work performed on L & M's construction projects by L & M's subcontractors.

8. The ISO has acknowledged and admitted that its forms were intended to provide and do obligate insurers like Shelter Insurance using its policy forms to defend and indemnify contractors like L & M from claims for defective construction work by subcontractors causing property damage and developed and filed with insurers new forms intended to exclude coverage for such claims. More specifically, the ISO has admitted that under its policy forms an insured general contractor would have coverage for (1) damage to its work arising out of the negligence of a subcontractor, and (2) damage to its work arising out of a subcontractor's work, as well as, of course, damage to others' property arising out of the subcontractor's negligence. On information and belief, Shelter Insurance knew of the coverage intent of the ISO forms comprising the L & M Policies. Alternatively, since the ISO acted on behalf of Shelter in drafting and interpreting the ISO forms comprising the L & M Policies, L & M had constructive knowledge of the intent of the ISO forms comprising the L & M policies.

### III. Shelter Insurance Willfully or Recklessly Breaches Its Policies.

9. In 1997 and 1998, L & M developed and constructed the Waverly Condominiums in West Point, Mississippi. Completion of the project required the construction of two buildings, Phase 1 and Phase 2, each of which contained six condominium units (the "Condominium Units") and Common Areas.

{00008439.DOC;}   Page 3 of 11

10. Acting as general contractor, L & M entered into subcontracts with other persons or entities for most of the work required to construct each building, including separate subcontracts on each building for the construction of the EIFS exterior wall cladding, the exterior brick wall cladding and the balconies. For convenient reference, the parties with whom L & M subcontracted are referred to hereafter as the "Responsible Subcontractors."

11. The Responsible Subcontractors failed to use reasonable care and workmanship and were otherwise negligent in performing their work and negligently supplied and installed a defective product, EIFS. As a result of their negligence, instead of keeping water out, the EIFS, exterior brick and balconies, allowed water to enter into the property. This water damaged the condominium buildings and related property.

12. In 2004, the Waverly Owners learned that the condominium buildings were being damaged because of the negligent work of the Responsible Subcontractors for which L & M was legally accountable and liable. In due course, the Waverly Owners and individual unit owners filed a Complaint initiating a lawsuit (the "Lawsuit") in the Circuit Court of Clay County against L & M and the subcontractors and suppliers responsible for the negligent work related to the EIFS wall cladding and the EIFS cladding part of the balconies(the "EIFS Subcontractors"). The Complaint alleges, among other things, that the negligence of L & M and its subcontractors caused and continues to cause damage to the condominiums from water intrusion. A copy of the Complaint is attached as Exhibit "3."

13. Under the terms of the L & M Insurance Policies, Shelter Insurance was obligated to defend or pay for L & M's defense of the Lawsuit. L & M timely notified

Shelter Insurance of the Lawsuit and tendered its defense to Shelter Insurance, but in willful, malicious and reckless breach of its obligations under the policies, Shelter Insurance refused to defend L & M. Because of Shelter Insurance's breach of its duty to defend, L & M had to retain attorneys and began to incur attorneys' fees and other expenses to defend itself.

14. In due course, the Waverly Owners and individual unit owners filed an Amended Complaint against L & M. A copy of the Amended Complaint is attached as Exhibit "4." L & M again tendered the defense of the Amended Complaint and Lawsuit to Shelter Insurance, but in willful, malicious and reckless breach of its obligations under the L & M Insurance Policies, Shelter Insurance again denied both a defense and indemnity.

### IV. Settlement of Lawsuit.

15. In discovery, the Waverly Owners revealed they were demanding an award in excess of $1.6 million from L & M for water intrusion and property damage to the condominium buildings and loss of use caused by the negligent work of the Responsible Subcontractors for which L & M was legally responsible.

16. The trial court ordered the parties to participate in mediated settlement negotiations. As a result of these negotiations, L & M and the Waverly Owners and individual unit owners concluded it was in their interest to settle their respective claims and cross claims against the EIFS Subcontractors. L & M consented to these settlements in part because Shelter Insurance's refusal to defend impaired its ability to incur the

attorneys' and expert witness fees and expenses needed to prosecute to judgment its cross claims against the EIFS Subcontractors.

17. Based on the evidence produced in discovery, the trial courts decision to deny it summary judgment, and particularly in light of the failure of Shelter Insurance to defend it, L & M concluded that it was likely to have a judgment entered against it in excess of the limit in Shelter Insurance's policy. Shelter Insurance's refusal to defend impaired L & M's ability to incur the attorneys' fees and expert witness fees and expenses needed to contest the amount of the Waverly Owners' damage demand. Accordingly, L & M concluded it was in its interest to avoid incurring additional attorneys' fees and expenses and to settle with the Waverly Owners and individual unit owners.

18. After lengthy arms length negotiations, the parties entered into a Settlement Agreement the terms of which provided for:

(a) Entry of a Final Judgment for the Waverly Owners against L & M in the amount of $600,000;

(b) L & M's immediate payment of $50,000 in partial satisfaction of the Final Judgment;

(c) L & M'S assignment of all of its claims against Shelter Insurance to the Waverly Owners, including its claim for approximately $63,000 in attorneys fees and expenses to defend the Lawsuit and the $50,000 payment in partial satisfaction of the Final Judgment;

(d) The Waverly Owners' forbearance from execution or collecting the Judgment enforcing or collecting the balance of the Judgment pending from attempting to collect the Final Judgment from Shelter Insurance.

A copy of the Settlement Agreement will be provided to Shelter Insurance upon request.

19. In accordance with the Settlement Agreement, the Clay County Circuit Court entered a Final Judgment against L & M awarding the Waverly Owners $600,000. After crediting the payment made by L & M, the unsatisfied portion of the Final Judgment is $550,000. A copy of the Final Judgment is attached as Exhibit "5."

20. The Settlement Agreement and Final Judgment were the result of arms length negotiations, and the amount and terms of the settlement and Final Judgment were reasonable. Alternatively, L & M's actual liability to the Waverly Owners was at least the amount of the settlement and L & M was not a volunteer.

### V. Claims.

In addition to any claims asserted in the previous paragraphs, the following Claims are asserted separately and in the alternative.

### Claim 1: Breach of Insurance Contract

21. The Waverly Owners and L & M re-allege the allegations set forth in the previous paragraphs.

22. Shelter Insurance breached its obligations under the L & M Insurance Policies by refusing to defend L & M and denying coverage from the claims made against L & M in the Lawsuit. As a proximate result of the this wrongdoing, L & M was inadequately protected from liability, incurred attorneys fees and expenses as detailed above, and was compelled to enter into the Settlement Agreement and agree to entry of

the Final Judgment. Accordingly, L & M and the Waverly Owners, as assignee and/or Judgment creditor, are entitled to the relief demanded below.

### Claim 2: Breach of Duty of Good Faith and Fair Dealing

23. The Waverly Owners and L & M re-allege the allegations set forth in the previous paragraphs.

24. Shelter Insurance's acts and omissions breached its duty to investigate and its duty of good faith and fair dealing. As a proximate result of this wrongdoing, L & M was inadequately protected from liability, incurred attorneys fees and expenses as detailed above, and was compelled to enter into the Settlement Agreement and agree to entry of the Final Judgment. Accordingly, L & M and the Waverly Owners, as assignee and/or Judgment creditor, are entitled to the relief demanded below.

### Claim 3: Insurance Bad Faith/Independent Tort

25. The Waverly Owners and L & M re-allege the allegations set forth in the previous paragraphs.

26. Shelter Insurance committed a willful and malicious and reckless breach of the L & M Insurance Policies in refusing to defend and indemnify and otherwise denying coverage to L & M and in other actions specified in preceding paragraphs. As a proximate result of the this wrongdoing, L & M was inadequately protected from liability, incurred attorneys fees and expenses as detailed above, and was compelled to enter into the Settlement Agreement and agree to entry of the Final Judgment. Accordingly, L & M and the Waverly Owners, as assignee and/or Judgment creditor, are entitled to the relief demanded below.

### Claim 4: Breach of Fiducial Duties

27. The Waverly Owners and L & M re-allege the allegations set forth in the previous paragraphs.

28. Under Mississippi law, the insurance industry generally follows and is bound by the principal of uberrimae fides, or highest good faith, in all of its relations with and actions toward insureds.

29. Shelter Insurance breached and violated its duty of highest good faith, or fiducial duties, owing to L & M. As a proximate result of this wrongdoing, L & M was inadequately protected from liability, incurred attorneys fees and expenses as detailed above, and was compelled to enter into the Settlement Agreement and agree to entry of the Final Judgment. Accordingly, L & M and the Waverly Owners, as assignee and/or Judgment creditor, are entitled to the relief demanded below.

### VI. Demand

WHEREFORE, L & M and the Waverly Owners, in its own capacity and as the assignee of L & M's claims, demands that judgment be entered against Shelter Insurance in their favor for the following relief:

(1) An award of $550,000 plus interest at the appropriate rate as indemnification for the sums owed the Waverly Owners by L & M to satisfy the unpaid balance owed under the Settlement Agreement and Final Judgment;

(2) An award of $50,000 for the payment made by L & M to the Waverly Owners in partial satisfaction of the Final Judgment;

(3) An award in excess of $67,000, the exact amount to be proven at the trial of this cause, for attorneys' fees and expenses incurred by L & M in defending the Lawsuit;

(4) An award of punitive damages to be set by the jury in this cause;

(5) An award for attorneys' fees, expenses and costs; prejudgment interest and post judgment interest;

(6) Such other or alternative relief as the Court finds justified in the premises.

           L & M Construction, Inc.; Waverly Place
           Condominium Owners' Association, Inc.

        BY: _____
           John M. "Mickey" Montgomery
           MSB No. 3418
           One of Their Counsel

Of Counsel:

Robert C. Williamson, Jr.
Robert Chapman Williamson, P.A.
755 North Congress Street
Jackson, Mississippi 39202
Telephone: (601) 948-6005
Facsimile: (601) 958-0306
Email: *rcw@williamsonlawfirm.com*

John M. "Mickey" Montgomery
John M. Mickey Montgomery, PLLC
P. O. Box 891
Starkville, MS 39759
Telephone: (662) 323-6916
Fax: (662) 323-0980
Email: *mickeymontgomery@montgomerylawoffice.net*

*Petition for Pro Hac Vice Admission Pending*
Daniel K. Bryson
Lewis &Roberts, PLLC
3700 Glenwood Avenue, Suite 400
Raleigh, NC 27612
Telephone: (919) 981-0191
Fax: (919) 981-0341
Email: *dkb@lewis-roberts.com*